DANIEL S. MIDDLEKAUFF *vs.* JACOB BARRICK AND OTHERS.
*December* 1846.

</div>

*M* agreed with *B* and *H*, to sell them lands in *Maryland*, in consideration of which they agreed to deliver to him conveyances which they held, for certain lands in *Illinois*. The contract contained no covenant nor warranty of title. The case, in fact, was clear of fraud or misrepresentation, and the bill did not allege mistake. The purchasers of the *Maryland* property were let into possession. The conveyances of the *Illinois* land to *M*, were delivered. *M*, finding he could not recover possession under them, filed his bill to cancel his agreement with *B* and *H*; and to be restored to his original possession. HELD, that a mistake as to title, in which both parties participated, and by which both might be injured, in the absence of warranty, fraudulent misrepresentation, or concealment, would not entitle the complainant to have the contract vacated.

Middlekauff *vs.* Barrick, *et al.*—1846.

It was the duty of *M*, to have investigated the title to the *Illinois* lands, or he might have protected himself against injury, by appropriate covenants; having done neither, the loss is the consequence of his own supineness.

In this case, the grantors of the deeds for the *Illinois* land were not parties. In their absence, the court could not assume their title of no value, and cancel those deeds. To give relief, by restoring possession of the *Maryland* lands, would be to enable *M* to regain them, while he retained title to the *Illinois*, and a right to sue on the covenants to him.

If a purchaser has taken a conveyance, and there be no fraud, he has no remedy, though evicted for want of title, except upon the covenants in his deed.

APPEAL from the Equity side of *Washington* county court.

On the 18th July 1843, the appellant filed his bill praying subpœna, against *Elizabeth Lawrence, Alexander Neill* and *Andrew Kershner*, and order of publication against *Jacob Barrick* and *George W. Himes*, which was duly published.

The bill was founded upon the following contracts :—

"In consideration of the matters hereinafter mentioned, *Elizabeth Lawrence* agrees, upon the full payment of the whole purchase money, as presently herein directed, to convey by a good deed to *Daniel S. Middlekauff*, his heirs or assigns, a parcel of woodland belonging to the farm at present tenanted by one *Makle*, the boundary of which parcel of woodland, is to commence at a corner formed, &c.

"And in consideration of the above agreements by the said *E.*, the said *D. S. M.* agrees to pay for the above described parcel of woodland, at the rate of $55 per acre, &c. And the said *E. L.*, agrees to deliver immediate possession of the said premises. In witness whereof we have hereunto set our hands and seals, this 23rd February 1836.

DANIEL S. MIDDLEKAUFF, ( Seal. ) "

"And the said *E. L.*, agrees to execute a deed, as above stated, conveying a good title and warranty of title.

E. LAWRENCE, ( Seal. ) "

Endorsed.

"Received January 9th, 1838, of *D. S. M.*, $533.—Sept. 11th, 1838, *D. M.* executed his two promissory notes to *Mrs. E. L.*, for all payments due up to the 1st April 1839.—Nov. 10th, 1838, *D. M.* this day executed his promissory note to *Mrs. L.* for $824.25, the amount due on the last payment."

The said contract was also endorsed.

"I, *D. S. M.*, for and in consideration of certain lands in *Illinois*, sold me this day, have bargained, sold and transferred all my right, title, interest and estate, in the within contract, to *Jacob Barrick* and *George W. Himes*, and I hereby authorise and request *Mrs. E. L.*, to execute a conveyance for the same to the said *B.* and *H.*, hereby releasing to them all my interest herein. In witness whereof, I have hereunto subscribed my name and affixed my seal, this 10th September 1840.

*D. S. M.*, ( Seal. ) "

"Articles of agreement made this 8th day of January 1839, between *Alexander Neill* and *Andrew Kershner*, trustees for the sale of the real estate of *Elizabeth Lawrence*, and *D. S. M.* Witnesseth, that for and in consideration of the covenants and agreements hereinafter mentioned, the said *N.* and *K.*, trustees as aforesaid, have this day sold to the said *M.*, the farm of said *L.*, containing, &c., at, &c., of, &c., per acre, for each and every acre said farm may contain. The said *Middlekauff*, on his part agrees to pay the sum of, &c., as follows, viz., &c. Possession of the same to be taken on the first day of April next, the tenants' rights reserved; on payment of the whole purchase money, a deed will be executed by said trustees."

These articles were endorsed.

"For value received I hereby assign, transfer and make over all my right, title, interest and estate, in the within agreement, to *Jacob Barrick* and *George W. Himes*, and I hereby authorise the trustees to execute a conveyance of the same to said *B.* and *H.—D. S. M.*—Sept. 10th 1840."

"Memorandum of a contract entered into this 10th of September 1840, between *D. S. M.* and *Jacob Barrick*, and *George W. Himes*, of *Pennsylvania*. Whereas the said *D. S.*, has this day bargained and sold, &c., to the said *J.* and *G.*, all those two parcels of land as purchased by the said *D.* from *E. L.*, and from *A. N.* and *A. K.*, trustees for said *E. L.*, containing in all, &c., for a more perfect description thereof, reference is made to the several contracts entered into by the said *Daniel* with the said *Elizabeth* and the trustees aforesaid; and whereas the said *D.* has, in considera-

tion thereof, received conveyances from certain persons procured by the said *B.* and *H.*, for certain lands in the *State of Illinois*, which said conveyances the said *B.* and *H.* have this day delivered to the said *M.* And whereas the property sold to *B.* and *H.* by the said *M.*, is incumbered by liens upon it to the amount of $4000, and upwards, and until said liens are paid no deeds for the same can be obtained, either by the said *M.* or his assignees, and it being the intention of the parties aforesaid, that but $2000, part of said sum of $4000, shall remain a lien upon said land, and which his assignees, the said *B.* and *H.*, are to pay.

"Now therefore it is covenanted and agreed, by the said *M.*, in consideration of the said *B.* and *H.* delivering up the conveyance of the *Illinois* land, aforesaid, to him, that he the said *M.* will fully pay all liens and incumbrances upon said land, over and above the sum of $2000, that is to say, he will fully pay to *E. L.*, the amount of money due to her upon the land, and procure a deed from her to said *B.* and *H.*, or their assignee, and that he will at all times hereafter defend and save the said *B.* and *H.*, harmless, from the payment of any sum, but the said sum of $2000, which they the said *B.* and *H.* bind themselves to pay. And he, the said *M.*, further agrees to pay the trustees aforesaid, the debt by him due them, so as to reduce the same to the sum of $2000, and the said *B.* and *H.*, on their part, covenant and agree, to become responsible to said trustees, and to pay them on *M's* contract the sum of $2000, with interest thereon, from, &c., or sooner, if possession is delivered; and should there be any taxes or tax lien upon said land, so as aforesaid given, granted and sold, or proved so to be by said *B.* and *H.*, in *Illinois*, they, the said *B.* and *H.*, agree to pay the same, on his, the said *M.*, producing the collector's certificate of the amount, and of his payment thereof. In witness whereof, the said parties hereto have subscribed their names and affixed their seals, the day and year first aforesaid.

|  |  |
|---|---|
| *D. S. M.* | ( Seal. ) |
| *J. B.* | ( Seal. ) |
| *G. W. H.* | ( Seal. ) " |

" I, *D. M.*, have this day received from *B.* and *H.*, conveyances for the land in *Illinois*, called for in the within agreement.—*D. S. M.*—Sept. 10th, 1840."

"We, *J. B.* and *G. W. H.*, have this day received assignments from *D. M.*, for the land owned by him in *Washington* county, and called for by the within agreement.—*J. B.*, *G. W. H.*—Sept. 10th 1840." .

One indenture delivered to *D. S. M.* by *B.* and *H.*, was made 24th August 1840, between " *George Albright*, and *Sarah his wife*, *Jacob Long*, and *Margaret his wife*, late *Margaret Albright*, *James Ferman*, and *Catharine his wife*, late *Catharine Albright*, all of the city of *Lancaster*, in the State of *Pennsylvania*, and *John Albright*, and *Ann Maria his wife*, of the county of *Huntington*, in the State aforesaid, of the first part, and *Daniel S. Middlekauff*, of the county of *Washington*, in the State of *Maryland*, of the second part, witnesseth," &c.

Another indenture was made on the 8th September 1840, between "*Henry Smith*, and *Susanna his wife*, *George C. Cockran*, and *Margaret his wife*, *Lewis S. Ferney*, and *Mary his wife*, of the borough of *Waynesboro*, *Washington* township, *Franklin* county, and commonwealth of *Pennsylvania*, of the one part, and *Daniel S. Middlekauff*, of *Washington* county, and State of *Maryland*, of the other part, witnesseth," &c.

And alleged, that the lands in *Illinois*, sold him by *B. & H.*, were in the possession of the heirs at law of *Jacob W. Albright*, who refused to deliver them up; that these were greatly incumbered with tax titles, and for taxes, and had been sold for taxes before his purchase; that the parties mentioned in the deeds, procured by *B.* and *H.* to complainant, were not the heirs at law of *J. W. A.*, and said deeds convey no right or interest to complainant; that his efforts to establish his title in *Illinois*, ended in expense and trouble, without success. That the said *B. & H.* had fraudulently represented the title of the *Illinois* land to him, and deceived him in that particular, when he contracted with them; that complainant delivered *B. & H.* possession of the *Washington* county lands, which they retain

without deeds, from the original vendors, while he is still responsible for the payment of the balance due of the original purchase, and for which there is judgment against him. Prayer, that the contract and assignment made between complainant and *B. & H.*, may be given up and cancelled, as having been obtained by fraud, and without any consideration; that he may be restored to the possession of his property in *Washington* county, as fully as he had it before said contract was entered into; for an account of rents and profits; and that *L. N. & K.* may convey to him, upon payment of the balance of purchase money; and for general relief.

The answer of *Jacob Barrick* admitted, that the complainant did purchase from *Mrs. E. L., A. N.* and *A. K.* And that the contracts for said several purchases are truly exhibited by the complainant. But this defendant does not know, what payments were made by the complainant upon said purchases. He does know, that at the time of the contract between the complainant and the defendants, for the purchase of said lands, there were liens and incumbrances, for purchase money, upon them to the amount of more than $4000; that some time in the autumn of 1840, *M.* called on this defendant, and proposed to sell this defendant the above mentioned lands, this defendant did not first apply to said *M.* to buy the same; at the instance of said *M.*, a negotiation concerning the sale and purchase of said lands, was opened with this defendant, and this defendant on behalf of himself and the said *Himes*, arranged the terms and conditions of said contract, and concluded the same, by entering into the articles of agreement exhibited by the bill; that at the time of entering into said contract, the sum of $2000, which the defendant agreed to pay on said land to *Mrs. L.*, and her said trustees, as set forth in said agreement, amounted, in the judgment of this defendant, to more than two-thirds of the whole value of said lands, and that the lands in *Illinois*, given in part in exchange therefor, constituted much the smallest portion of the consideration. This defendant believes, that the said *Maryland* land, covered as it is by the liens aforesaid, would not now sell for a price much above the $2000, and interest thereon, which the defendants are bound to pay on

said land by the terms of their said contract; that he and the said *Himes*, nor either of them, never did agree to warrant and defend the title to said *Illinois* lands; that in dealing with the said *M.* for said lands, he acted in good faith; that the grantors in the deeds exhibited by the complainants, represented to this defendant, that their title for said *Illinois* land was good, that these defendants paid them a fair price for said lands, and if any fraud, deception or concealment was practised in the case, it was by said grantors, and not by this defendant.    And this defendant is advised, that the remedy of the said *M.*, if he have any remedy, is against the said grantors, and not against the defendants in this cause.    This defendant further saith, that the said *M.* agreed to accept, and by the terms and conditions of said written agreement of the 10th September 1840, did accept, of said deeds for the *Illinois* lands, without any general warranty of title, or warranty against incumbrances from said grantors.    And this defendant denies all fraud, deceit, misrepresentation and concealment, on his part, in reference to the purchase and exchange of said lands, or in the negotiations thereof, as charged by the complainant in said bill of complaint.    This defendant denies that he practised any fraud or deceit, by representing to the said *M.*, that the only incumbrances on said lands, were taxes, and tax liens, nor does he admit that he made such representations; that if said lands had been previously sold for taxes, this defendant had no knowledge of it.    And he denies expressly, that he concealed from the said *M.* any knowledge or information which he was in possession of, in relation to liens for taxes, or incumbrances on said lands, or the title thereto.    Relying upon the representations which he had received, from the parties from whom he purchased said land, he believed there were no liens or incumbrances upon said lands, save the taxes and tax liens: and for the payment of them, he was willing to provide, and did provide by the article of agreement aforesaid.    And these defendants have at all times been willing to comply with the terms and conditions of the contract on their part.    And this defendant denies, that the complainant has taken every possible step, for the purpose of establishing and investigating his title to said

lands in *Illinois*, as alleged in said bill, on the contrary thereof, charges, that the complainant has taken no legal or proper steps, at all, to establish such title. Nor does this defendant admit, that the legal title to said *Illinois* lands was not vested in the grantors in the deeds aforesaid, at the time said deeds were executed. But if there were such defect in their title, the defendants in this cause are not bound to make that title good. And this defendant admits, as set forth in said bill of complaint, that in pursuance of the terms of said agreement, the said *M.* assigned the contracts with *Mrs. L.*, and her trustees, to these defendants, and delivered possession of said lands in *Maryland,* to the defendants in this cause, in the spring of 1841, and that they have ever since been in possession thereof. And this defendant charges, that the complainant has acted fraudulently towards these defendants, in not paying off the liens upon the *Maryland* land, over and above the sum of $2000, which, by the terms of his agreement, he was bound to do, but has suffered said lien and incumbrance to remain unsatisfied, as this defendant believes. And these defendants are now in danger of having the whole of said *Maryland* lands sold to pay off said liens.

The other parties also answered the bill.

A general replication was filed, and proof taken.

On the 13th April 1845, the county court, (MARTIN, C. J., and MARSHALL, A. J.,) delivered the following opinion.

It appears by the contract of the 10th September 1840, that *David S. Middlekauff,* had bargained and sold to *Jacob Barrick* and *George W. Himes,* a tract of land in *Washington* county, which he had purchased from *Mrs. Lawrence,* and her trustees, in consideration of certain conveyances of lands, in the State of *Illinois,* procured by *Barrick* and *Himes.*

The *Illinois* lands were conveyed to the complainant, not by *Barrick* and *Himes,* but by persons who professed to be the proprietors of the said lands.

The consideration paid, in part, by the defendants to the complainant, for the *Washington* county estate, was the procurement and delivery to him of those deeds. The first deed is dated on the 24th of August 1840, and the second on the 5th

38    v.4

of September of the same year, and appear to have been delivered to *Middlekauff*, on the day of the contract.　On the same day, *Middlekauff* assigned to the defendants, *Barrick* and *Himes*, his interest in the *Washington* county lands, the legal title to which still remained in *Mrs. Lawrence*, and her trustees.　The possession of this property was delivered by *Middlekauff* to *Barrick* and *Himes* in 1841.　It appears that the grantors in the deeds of the 24th of August, and of the 8th of September 1840, had no title to the lands professed to be conveyed by them.

The land in question was the property of *Mrs. Albright*, who according to the statute law of *Illinois* became entitled to it upon the death of her daughter, intestate and without issue. There has been then a failure of title.

On this ground, the bill has been instituted to vacate the contract.　The deeds contain no general warranty of title.

In the contract of the 10th of September, there is to be found covenants between the parties on the subject of the incumbrances and liens, to which the *Washington* county and the *Illinois* lands, were or might be liable, but there are no covenants relative to the sufficiency of title.　On this subject the contract is silent.　The bill charges, that at the time of the delivery of the deeds in question to *Middlekauff*, the grantors had no title to the lands in *Illinois*.　That the defendants, *Barrick* and *Himes*, were aware of this defect in the title professed to be conveyed to the complainant, but concealed their knowledge of it; and in passing those deeds to the complainant, were guilty of fraudulent misrepresentation and concealment. The answers of the defendants directly deny this allegation, and being responsive to the bill, must be regarded as conclusive, unless, according to the well established rule of evidence, they are overcome by the testimony of two witnesses, or one witness with corroborating circumstances.　It is not pretended that there is in this cause, any testimony which can be considered as disproving these responsive averments of the answers, and the charge of fraudulent misrepresentation and concealment, in reference to the title of the grantors to the *Illinois* lands, is to be held as not proved, and therefore dismissed in

the examination of the case. It has been contended, that if there was no fraud in this transaction, yet there was an essential mistake in it, and on that ground the contract ought to be vacated. There may have been in this transaction, a mistake. The conveyances of the *Illinois* lands, may have been procured and delivered by the defendants to the complainant, and accepted by him, under the belief that the grantors in those deeds had title to the lands which they professed to convey. The bill does not allege the existence of any mistake. The averment is, fraud, not mistake. But would a mistake of this character, even if charged in the bill, in which both parties participated, and by which both were injured, in the absence of all fraudulent misrepresentation or concealment on the part of *Barrick* and *Himes*, entitle the complainant to the relief which he has sought, or authorise this court to vacate the contract? In our opinion it would not.

It is to be noticed, that whatever may have been the belief of the parties when the conveyances in question were delivered and accepted, as to the title of the grantors to the lands embraced by them, there is no evidence that *Barrick* and *Himes*, at the time of the contract, made any representation or affirmation upon this subject. In this case the contract was executed, on the part of the defendants, by the conveyances for the *Illinois* lands, and on the part of the complainant, by an assignment to *Barrick* and *Himes*, of the whole of his interest in the *Washington* county estate, and by the delivery of the possession of it to the defendants, under and by virtue of the contract and assignment. It was the duty of *Middlekauff*, to have investigated the title of the grantors to the lands which they professed to convey; or he might have guarded himself against injury by appropriate covenants. Having done neither, the loss to which he is subjected, and of which he complains, is the consequence of his own supineness. Upon this subject, *Mr. Sugden*, says, in his treatise on vendors : " With the exception of a vendor or his agent suppressing a defect in the title, it is clear, that a purchaser cannot obtain relief against any defect in the title to which his covenants do not extend, and therefore if a purchaser neglect to have the title investiga-

ted, or his counsel overlook any defect in it, he is without remedy." 1 *Sug. on Ven.*, 7, *sec.* 29. Again, 1 *Sug. on Ven.*, 286, *sec.* 25 : "Generally speaking, a purchaser after a conveyance, has no remedy except upon the covenants he has obtained, although evicted for want of title, and however fatal the defect may be, if there is no fraudulent concealment, the purchaser's only remedy is under the covenants." *Ib.*, 283, 284. 2 *Wans.*, 287, as cited in 1 *Sug.*, 284. *Urmston vs. Pate,* cited 2 *Sug.*, 283.

The ground on which a court of equity interposes, in a case like this, is misrepresentation or concealment. This, we think, the complainant has failed to establish, and his bill must therefore be dismissed, with costs.

The complainant appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE and MAGRUDER, J.

By JERVIS SPENCER for the appellant,

MAGRUDER, J., delivered the opinion of this court.

For mistake or misrepresentation of matters of fact, contracts and conveyances may sometimes be set aside by courts of equity. Every mistake of facts, however, will not give the purchaser a right to ask, that his contract be annulled. See 1*st Story's Reports*, 172. 1*st Story's Equity Jurisprudence*, *sections* 150, 151.

The cases cited by the court below, clearly establish, that if the purchaser has taken a conveyance, and there be no fraud, he has no remedy, although he be evicted for want of title: except upon the covenants in his deed. See, also, 5 *Johns. Chan. Reps.*, 79. 2 *J. C. R.*, 519.

In this case, fraud is expressly denied, and there is no proof that any was committed. The complainant, therefore, can have no title to relief.

There is another objection to the relief which he seeks. The lands purchased by him are situate in the State of *Illinois*, and the title to them, (such as the parties granting, could give him,) is in the complainant; we cannot conclude

that this title is valueless, especially in a suit to which the grantors in the deed are not parties, and to give the relief which is asked, would be to cancel the contract between these parties, only so far as it relates to the lands in *Washington* county, and thus restore to the complainant such title to those lands, as was transferred to him, while he retains the title to the lands in *Illinois*, and a right to sue on the covenants contained in the deeds to him.

But, for the reasons assigned by the court below, no relief can be had in this case.

<div align="center">DECREE AFFIRMED.</div>