(Decided December 17th, 1862.)

---

WILLIAM TIMMS and WIFE, *vs*. WILLIAM T. SHANNON, use of ABRAHAM P. SHANNON.

In pursuance of articles of agreement between A and B, for the sale and purchase of certain lands, A and wife, on the 31st of July 1851, executed a deed of said lands to B, with a covenant of warranty *against all persons claiming under the said A*, and on the day following, B paid the first instalment of the purchase money, and gave his bonds for the payment of the balance thereof; and further to secure the payment thereof, on the 16th of January 1852, B executed to A a mortgage of said lands, together with other lands—a similar mortgage, executed on the 1st of August 1851, having been cancelled for some supposed defect. After payment by B of all of said bonds except one for $1,000, and two for $250 each, A assigned said mortgage and transferred said unpaid bonds to C. Prior to said assignment and transfer, B had sold to A personal property amounting at one time to the sum of $74, and at another to the sum of $175, for the latter of which he received from A his due-bill, both of which sums were due and unpaid at the time of the said assignment and transfer; and prior to the execution of the said articles of agreement, A had mortgaged to D the lands subsequently sold to B, to secure the payment of a debt of $1,000, which mortgage debt was due and outstanding at the date of said assignment and transfer. To enforce the payment of the said three bonds, C filed a bill for the foreclosure of said mortgage, and sale of the mortgaged premises. HELD:

1st. On an offer of evidence of a parol agreement made by A, at the time the deed of the land was made, and the bonds and mortgage of the 1st of August 1851, were executed, to the effect that he would pay the mortgage debt to D, and if he should fail to do so, that B should retain a sufficient sum for that purpose, out of the last instalments of the purchase money: that such evidence is inadmissible, because it varies or contradicts the written contract, as evidenced by the bonds and mortgage.

2nd. That in the absence of any allegation of fraud, accident or mistake in the execution of the bonds or mortgage, the same general rule prevails in equity as at law, as to the inadmissibility of parol evidence to vary or contradict a written contract.

3rd. In no possible view of the case, could such evidence be introduced to raise an equity against an assignee of said mortgage in good faith, and without notice or knowledge of such parol agreement.

4th. The contract between the parties having been executed, by the acceptance of the deed of conveyance of the lands, and the execution of the bonds and mortgage by the appellants, and no fraud, mistake or surprise being charged or proved in the transaction, the stipulations in the agreement must be considered thereby discharged, and on these instruments alone, the bonds, mortgage and deed, must depend the rights of the parties.

If a purchaser of land accept a deed with special warranty, and execute his bonds and mortgage for the purchase money, he cannot, in a suit in equity brought by an assignee of the mortgage to enforce its payment, claim to be allowed a deduction or abatement from the mortgage debt, by reason of an outstanding incumbrance on the land within the warranty.

In Courts of Equity, a mortgage of lands is regarded as a mere security for money, a chattel interest or chose in action, the debt being considered as the principal, and the mortgage as the accessory or appurtenant thereto.

An assignee of a chose in action, not negotiable, takes it subject to the equities which existed against it in the hands of the assignor at the time of the assignment.

Although, in an action for the price of the purchase of an estate, an eviction is not necessary for a defence on failure of consideration from a defect in title, where there has been no conveyance; yet an actual eviction is necessary to constitute a defence in such case, where a deed has been given, and the vendee has entered into possession. The grantee not evicted, but remaining in undisturbed possession, must rely on his covenants, except in case of fraud.

APPEAL from the Equity Side of the Circuit Court for Cecil county.

The bill in this case was filed by the appellee against the appellants, on the 23rd of December 1856, for the foreclosure of a mortgage, and sale of the mortgaged premises. The allegations of the bill and answers, and the evidence in the case, are stated in the arguments of counsel, and

the opinion of this Court. The appeal is taken from the decree of the Court below, (PRICE, J.,) passed on the 11th of October 1859, in pursuance of the following opinion :

The counsel for the defendants, in their argument, have taken, I perceive, two distinct positions: 1st. That this is a clear case of *fraud and deceit* on the part of Keen, and on this ground they claim the admissibility of the parol evidence, and also the relief they seek. Although fraud is relied on thus directly and positively in the *argument,* I do not find that fraud or deceit is any where charged or alleged in the *answer;* and the first question to be disposed of is, can the defendants avail themselves of fraud, even if it be proven by the evidence, when it is not charged in the answer, and not put at issue in the pleadings? The general rule on this subject, is stated clearly and distinctly in 2 *Daniel's Ch. Prac.,* (*Perkins' Ed.,*) 814, 815, in these words: "It is of great importance for a pleader, in preparing an answer, to bear in mind, that besides answering the plaintiff's case as made by the bill, he has to state to the Court, *upon the answer, all the circumstances* of which the defendant intends to avail himself by way of defence; for it is a rule that the defendant is bound to apprise a plaintiff, by *his answer*, of the nature of the case he intends to set up, (and that, too, in a clear, unambiguous manner;) and that a defendant cannot avail himself of any defence which is not stated in the answer, even although it should appear in the evidence." Vide the case there cited. In the case of *Gouverneur vs. Elmendorf,* (5 *Johns. Ch. Rep.,* 79,) this very point was expressly decided by Chancellor Kent. That case was very much like the present. It was, like this, a bill filed for a foreclosure and sale of mortgaged premises. The defendant, in his answer, there as here, admitted the execution of the mortgage; and there alleged, as here, that the mortgage was to secure the payment of a balance of purchase money for

certain land sold by the mortgagee to the mortgagor, and for which a deed had been executed, and to which land, it was alleged in the answer, the complainants had not a good title, and that they were encumbered in various ways; but the *answer* did not charge *fraud*, although there as here, fraud was strongly relied on, and pressed in the *argument*. The marginal note to that case is in these words: "The Court will not afford relief against a contract because of fraud, unless it be made a distinct ground of allegation, and be put at issue in the pleadings." Chancellor Kent said: "I do not understand that any such charge (of fraud) exists in the answer, or was intended by it, as a substantial ground of defence, although such a charge is now put forward by the defendant's counsel as one of their points. But it is requisite that the charge of fraud should be made a distinct ground of allegation by the party *in pleading*, otherwise it is not to be deemed in issue, and cannot affect the contract in question. This was the clear and decided doctrine of the Court of Errors, in *James vs. McKernon*, 6 *Johns. Rep.*, 543."

2nd. The counsel for the defendants also contend, that independent of any verbal agreement, they are entitled to the relief they ask on other grounds:

(1.) That they are entitled to have their claims allowed by way of set-off, under the statutes of set-off, 1785, ch. 46; 1763, ch. 23; and 1829, ch. 51; and the first question thus presented is, are these general statutes of set-off applicable to a bill filed in chancery for a foreclosure and sale of mortgaged premises? I find two cases where this point has been expressly decided, one in New York, the other in New Jersey. The case in New York, is that of *Troup vs. Haight*, 1 *Hopkins Ch. Rep.*, 270, where it is said: "The object of a suit for foreclosure, is to obtain satisfaction from the law, and it is inconsistent with the nature of such a mortgage security to allow a set-off; a mortgage being a

specific encumbrance, and the object of such a suit being to foreclose the estate of the mortgagor, if he will not redeem, and to obtain satisfaction by a sale of the land. It seems to follow that the general law of set-off is not applicable to such a suit," Under the Revised Statutes in New York, the law is now different. 2 Rev. Stat., 174, sec. 40. The case in New Jersey, is that of *White vs. Williams*, 2 *Green's Ch. Rep.*, 376, where it is said: "A suit for foreclosure of a mortgage is not a personal action, it is a proceeding *in rem.* against the land, not against the person of the debtor, and the defendant will not be permitted to set-off any demand he may have against the mortgage debt. Nothing can be set up against the encumbrance, except payment or part payment, which operates directly as a release of the encumbrance, *pro tanto."* Vide also *Pettat vs. Ellis*, 9 *Ves.*, 563. *Powell on Mortgages*, 945.

(2.) The counsel for the defendant also contend that they are entitled to the set-off of the amount paid Davis on his mortgage, by virtue of the original contract of sale, and that it makes no difference whether the contract of sale has been executed by an actual conveyance or not. I incline to think that the execution of the contract by an actual conveyance, makes a great deal of difference, and that in such a case, in the absence of fraud, the defendants can only rely on the covenants in the deed. This seems to be the settled law in Maryland, as will appear from the case of *Middlekauff vs. Barrick & others*, 4 *Gill*, 290; and in the case of *Gouveneur vs. Elmendorf*, 5 *Johns. Ch. Rep.*, 79, Chancellor Kent says: "A vendor selling in good faith, is not responsible for the goodness of his title beyond the extent of the covenants of his deed." And the question of fraud, as I have heretofore said, is not before the Court in this case.

3rd. The defendants also claim the set-off of the amount paid Davis by virtue of the covenant of special warranty

in the deed. The objection to this, as urged by the counsel for the complainant, is the same as made against the matter of fraud, viz: that this defence or claim is no where alleged in the *answer*, and is not at issue in the pleadings, and therefore cannot be noticed by the Court. It seems to me that this objection is well taken, and ought to be sustained on the authority of the rule as stated in *Daniel's Ch. Prac.*, heretofore mentioned.

The last point made by the counsel of the defendants is, that "the assignee of the mortgage is in no better condition than the mortgagee; it is in his hands, subject to all the equities as when in the hands of the mortgagee." I have no doubt of the correctness of this, as a general rule, and that there is nothing in this case to exempt it from the operation of this rule; but still I cannot see how this is to avail the defendants, if I am right on the other points in the case. I will sign a decree, when presented, in accordance with this opinion.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Otho Scott*, for the appellant:

1. A purchaser of a *chose in action* cannot be in a better situation than the seller, and takes it subject to all the equities to which it would be liable in the hands of a seller. *Brandon vs. Brandon*, 39 *Eng. Law & Eq. Rep.* 2 *Sto. Eq.*, sec. 1047. *Smith & Talbott, vs. Donnell*, 9 *Gill*, 89. *Lindsey, et al., vs. Jackson, et al.*, 2 *Paige's Ch. Rep.*, 581.

2. The appellant has a right to be credited the sum paid Davis on his mortgage, the same being a lien on the land sold by Keen to the appellants, and is an incumbrance covered by the warranty from Keen to Timms. *Berry vs. The Coms. of the P. E. Church*, 7 *Md. Rep.*, 564. *Robinson vs. Marshall*, 11 *Md. Rep.*, 251.

3. Set-off will be allowed in equity as against a mortgage. There is nothing in the nature of a mortgage to prevent this. All of our legislation upon the subject treats it as *a debt*. See cases above cited. As to the rights of assignees in this connection, see 2 *Sto. Eq.*, sec. 1047, and 39 *Eng. Law & Eq. Rep.*, 186, also above cited.

If the evidence is not admissible, or the pleadings correct, the Court will remand, under the Act of 1832, ch. 302.

*J. T. McCullough*, for the appellee:

The appellant contends, that in addition to the credit of $74.02½, he is also entitled to a credit of $175, because of testimony showing a parol promise to credit the price of a yoke of oxen and horse. This evidence was excepted to, and ruled out by the Court below, for the reason that it appears that the due-bill was shown to be a memorandum of a sale of the horse and oxen, and it does not appear from its face to have had any connection with the mortgage debt. The due-bill is a written undertaking on the part of Keen. Parol testimony cannot be introduced to give an effect to it not expressed in the due-bill itself. 2 *Phil. Ev.*, (*last ed.*,) 573 and 574. If it was intended to make any such credit on the mortgage debt, why was the instrument of writing given in the form of a due-bill, and not a receipt?

Another defence against the bill is, that at the time of the execution of the mortgage of August 1st, 1861, (not the mortgage upon which the bill is filed,) there was a parole agreement, that if Keen did not pay off the prior mortgage of Davis, Timms should be allowed to off-set the same against the last instalments of the mortgage then about to be executed. Admitting, for the sake of the argument, that the testimony is admissible, it is contended that this defence is not supported by the testimony. The defendant's witnesses are here in conflict; they cannot both stand together. *Beard vs. Hubbell, et al.*, 9 *Gill*, 430.

The agreement is alleged to have been made at the time of the execution of the mortgage, given August 1st, 1851. The mortgage upon which the bill is filed, bears date the 16th of January 1852. It is not pretended that any parole agreement was made when this mortgage was executed. The appellants allege, in their answer, that this mortgage was given as a substitute for the first, and claim that it is liable to all the same equities. Admitting the existence of this parole agreement, and that, for the sake of the argument, it was binding upon Keen, it certainly cannot be contended that it would be binding after the execution of the mortgage of January the 16th, 1852. 2 *Phil. Ev., note* 494, *pp.* 666 to 669. But the rule of evidence is the same in equity as at law. Written evidence cannot be contradicted, added to, or varied by parole evidence. The evidence offered for that purpose is inadmissible. 2 *Sto. Eq.,* sec. 1531. 2 *Phil. Ev., (last edition,) note* 508, and cases there cited. *Watkins vs. Stocket,* 6 *H. & J.,* 435. The only cases where equity will permit parole evidences "to contradict the clear, certain and unequivocal import of a written instrument," are those of *fraud, mistake* and *surprise.* 1 *Sto. Eq.,* secs. 154 and 157. 2 *Phil. Ev.,* 698 and 508. But testimony of this character cannot be admitted, unless the answer of the defendant charges either fraud, mistake, or surprise. They no where allege that Timms was defrauded by Keen, either in the purchase of the land, or the execution of the mortgage. The parole testimony offered, is therefore entirely irrelevant, if used for any such purpose, as there is no issue of fraud raised by the pleadings. Proper allegations, charging the fraud relied upon, should always be made in pleadings before parole proof can be offered. *Hertle vs. McDonald,* 2 *Md. Ch. Dec.,* 129. Same case in 3 *Md. Rep.,* 366. *Showman & Wife, vs. Miller, et al.,* 6 *Md. Rep.,* 479. 2 *Danl. Ch. Pr., (Perkins' Ed.,)* 814 and 815. *Governeur vs. Elmon-*

*dorf*, 5 *John. Ch. Rep.*, 79. *Boone vs. Chiles*, 10 *Peters*, 177.

The appellant's counsel, in his argument, places the claim of set-off upon the articles of agreement. Timms, in neither of his answers, introduces this agreement as a ground of defence. He does not aver that Keen is bound to satisfy the Davis mortgage, because of his agreement to convey the property to Timms, clear of all incumbrances. There is no issue of this sort made by the pleadings. The agreement, therefore, is not testimony for any such purpose, nor was it brought forward to raise such an issue. The agreement is referred to in the answer, by the defendants below, merely as introductory to their averment, that Keen agreed by parole, at the time of the execution of the mortgage of the 1st of August 1851, to pay off the Davis mortgage, it being a prior lien on the property. The answers place the defence on this alleged parole promise by Keen, and not upon any supposed equities arising out of the agreement, or stipulations anterior to the execution of the deed and the mortgage of the 1st of August 1851. This defence is therefore irregular, and not justified by the pleadings. But should it be determined that the defence is properly before the Court, it cannot be legally sustained, for the reason, that when the deed was executed by Keen, and the mortgage by the appellants, all previous stipulations and agreements were merged in the deed and mortgage. The contract of sale was then executed, and no fraud, mistake or surprise being charged or proved, the parties must rely upon those instruments; Timms upon the covenants in his deed, and Keen upon his mortgage. By the execution of the mortgage, dated the 16th of January 1852, the mortgage of the 1st of August 1851, is cancelled, and all contracts and stipulations, verbal or written, are merged in the last mortgage, being the one upon which this suit is brought. The case of *Middlekauf vs. Barrick, et al.*, 4

*Gill*, 290, is conclusive on the point, "that in the absence of fraud, the party must rely on the covenants in his deed, where the contract has been executed by a deed." See, also, *Gouverneur vs. Elmendorf*, 5 *John. Ch. Rep.*, 79. 2 *Phil. Ev.*, 669. *Falconer vs. Garrison*, 1 *McCord Rep.*, 209. *Marshall vs. Haney*, 9 *Gill*, 259. Same case in 4 *Md. Rep.*, 498.

1. The first point of the appellant's counsel is, that "a purchaser of a *chose in action* cannot be in a better situation than the seller, and takes it subject to all the equities it would be liable to in the hands of the seller. It is not necessary to take issue with the counsel for the appellant, upon the doctrine here announced. It has, however, no application to a mortgage. A mortgage is not merely a *chose in action*. It is more, it is a pledge. Littleton calls the mortgagee "tenant in mortgage," *sec.* 332. Lord Coke speaks of a mortgage as an *"estate,"* "as if a man borrow a hundred pounds of another, and maketh an estate of lands unto him," &c. *Coke Litt.*, 205, *a*. *Har. & But. notes. Id.*, 204, *a. n.* 1. A mortgage is never spoken of as a *chose in action*, but as an estate. In fact, the interest of the mortgagor is more nearly allied to a *chose in action* than that of the mortgagee. See *Coke Litt.*, 290, *b. note* 1, *sec.* xv., where the following language occurs: "Now, according to our notions of mortgages, if the mortgage debt is not paid at the time appointed, the estate mortgaged is absolutely forfeited to, and becomes the property of, the mortgagee at law; but Courts of Equity *permit* the mortgagor to redeem, on payment to the mortgagee of his principal, interest and costs. Still, this is merely *a right* in equity, the legal *estate* continuing in the mortgagee."

The equities which may arise against a mortgage, are the same that may arise against any other deed conveying an interest in land. If the debt originally secured by the mortgage has been paid, then the mortgage in the hands

39    v.19

of the assignee would be of no more value than in the hands of the seller. But the assignee is entitled to the full value of the mortgage at the time of the assignment, and, in this case, Timms will not be permitted to set-off claims that he may have had against Keen, on any other account, at the time of the assignment. Nothing but actual payment or release can extinguish the mortgage. *Ladd vs. Wiggin*, 35 *N. H. Rep.*, 421. *Crosby vs. Chase*, 17 *Maine*, 369. *Elliot vs. Sleeper*, 2 *N. H. Rep.*, 525. *Willard vs. Harvey, et al.*, 5 *N. H. Rep.*, 252. *Davis vs. Maynard*, 9 *Mass.*, 242. *Atwood vs. Cobb*, 16 *Pick.*, 227. *Dana, et al., vs. Binney, et al.*, 7 *Ver.*, 493. A mortgage of land can only be discharged by payment or release. *Hadlock vs. Bulfinch*, 31 *Maine*, 246.

2. The next point of the appellant is, that he has a right to be credited the sum paid Davis on his mortgage, the same being a lien on the land sold by Keen to the appellants, and is an incumbrance covered by the warranty from Keen to Timms. This deed was excepted to in the Court below, as irrelevant to the issue made by the pleadings. The appellant, in neither of his answers, claims that he has a right to be credited the sum paid Davis, by reason of the covenants in this deed. The complainant is entitled to be informed of his defence, so that he may properly meet it. The authorities heretofore cited, establish the importance of this position. The *allegata* and *probata* must correspond. See, also, the rule from *Daniel's Chancery Practice*, cited above.

3. The last point made by the appellant is, that set-offs are allowed in equity. It is not proposed to deny the general proposition thus asserted by the counsel for the appellant, or that the cases cited support the doctrine. It is, however, denied that the statutes of set-off have any application to a bill in chancery, for a foreclosure and sale of mortgaged property, nor can it be shown that such a

doctrine has ever prevailed at common law, or in equity. As was before stated, the cases cited by the appellant were none of them upon a mortgage debt, and have reference only to promissory notes or *choses in action.* As has been shown above, a mortgage is not a *chose in action,* and therefore not liable to set-off. See the cases cited in Judge Price's opinion, which are certainly conclusive. *Troup vs. Haight,* 1 *Hopkins' Ch. Rep.,* 270. *White vs. Williams,* 2 *Green's Ch. Rep.,* 376. See also the cases cited above, showing that nothing but payment or release will extinguish a mortgage.

The counsel for the appellant has moved for the return of the proceedings to the Circuit Court, under the Act of 1832, ch. 302, sec. 6. This motion is resisted, because:

1st. The defendants have already had ample time to prepare their defence. This bill was originally filed on the 23rd day of December 1856. On the 8th day of April following, the defendants filed their first answer. With leave of the Court, afterwards, on the 8th day of February 1858, the amended and supplemental answer was filed, and on the 11th of October 1859, the decree was passed. It would seem that in the progress of three years, while the case was pending in the Circuit Court, the defendants have had ample time within which to determine what their defences are against the claim of the appellee.

2nd. It is evident, from the record in the cause, if the defendants really misconceived their defence, that such suggestions were made to them by the proceedings in the case, that they might have so amended their answers before the case was submitted, as to let in all the proof they have introduced, in the form of oral or written evidence. When the defendant's proof was excepted to, on two different occasions, the defendant might have applied for leave to amend his answer, so that proper issues could have been raised. It is now too late, after having submitted the

case to the Court below, and the decision has been against
him, to bring the case to this Court, for the purpose of se-
curing the advantage of amendments, and thus getting up
new issues, and of course trying the case upon other testi-
mony. "The unwillingness of Courts to permit a defend-
ant to change or add to the grounds of defence set up in
the first answer, is increased when the application is made
after the opinion of the Court and the testimony have indi-
cated how it may be modified to accomplish his purpose."
*Williams vs. The Savage Manufacturing Co.,* 3 *Md. Ch.
Dec.,* 418.

3rd. It will not avail the appellants, should they be suc-
cessful in their motion, and the only effect of sending back
the proceedings, will be to delay the complainant in the
collection of his money. If the appellant desires to amend
his answer, so as to let in his evidence charging fraud, he
must certainly fail, as his proof utterly fails in sustaining
such a charge. There is not the slightest proof going to
sustain it. On the contrary, Timms' own witnesses show
that he was fully notified of the existence of Davis' mort-
gage, and put upon his guard. The testimony of Lloyd,
himself, shows there was no fraud on the part of Keen. If
the answer is amended, so as to let in the deed and cove-
nant of special warranty as proof in the case, it will avail
nothing for the appellant. Keen himself is not liable in
equity on this covenant. If liable at all for failing to re-
move the incumbrance of the Davis mortgage, he is liable
at law. The claim of Timms against Keen, on the cove-
nant in the deed, is a personal claim, independent of and
separate from the mortgage. Timms could no more set-off
such a claim against Shannon than he could Keen's pro-
missory note. At the time of the assignment of the mort-
gage to Shannon, the Davis mortgage was unpaid. Timms
claims to have paid it on the 17th of October following,
long after the suit was brought, when of course, if not be-

fore, he received full notice of the assignment to Shannon. Timms has no remedy on the covenants in the deed against Shannon. His remedy is at law, and only against Keen personally.

There is no privity between Timms and Shannon on the covenant in the deed. "In covenant there must be a perfect privity between plaintiff and defendant." *Howard vs. Ramsay,* 7 *H. & J.,* 114. "The action for the breach of a mere personal contract, must be brought against the contracting party, and not one to whom he has assigned his interest." *Bouvier's Institutes, Vol.* 3, *page* 162. Keen contracts for himself and his heirs, and the covenant of warranty must be interpreted according to its plain import. It would be absurd to put Shannon on the defence against a claim by Timms under this clause of warranty. There being no privity between him and Timms, Shannon cannot be supposed to know why the incumbrances were not removed. Keen may have, and no doubt has, good defences against an action on warranty. Timms may be indebted to Keen on another account. It may have been that Keen gave up one of the other bonds admitted to have been paid in the bill. The only remedy Timms has, is upon the covenants in the deed. *Middlekauf vs. Barrick, et al.,* 4 *Gill,* 290. The only parties to this covenant are Keen and Timms.

The cases cited by the appellant's counsel, under his 2nd point, do not sustain him in his position. The case of *Berry vs. The Convention of the Episcopal Church,* differs essentially from this case. In that case there had been no deed executed. In this, the contract has been executed by a deed. In the Church case, the estate of the assignee was alleged to be insolvent. The appellant here makes no such averment in his answer, nor does he attempt to show it in his proof. The Church case did not decide that Berry was entitled to a set-off, by reason of the covenant, in the con-

tract between himself and the assignor, to convey "free of all incumbrance." The Court did decide, however, that he was not entitled to a set-off, because he might have made himself safe by retaining the amount of a dower right which he had paid, from a younger judgment which he had paid to the assignor after the assignment to the Church, and having failed to do so, he could not fall back upon the claim due the assignee.

4th. To authorize the appellate Court to remand a cause under the Act of 1832, ch. 302, the record must indicate that the ends of justice will be promoted by such further proceedings. *General Insurance Co. vs. United States Insurance Co.*, 10 *Md. Rep.*, 517. What is there in the record in this cause to indicate that justice will be promoted by remanding the proceedings?

5th. The appellee is entitled to a decree for a sale of the mortgage property, as the appellant admits a large part of the claim of the appellee to be due, even should the cause be remanded. *Reese & Fisher vs. The Bank of Commerce*, 14 *Md. Rep.*, 284.

BARTOL, J., delivered the opinion of this Court:

On the 3rd day of July 1851, by articles of agreement, Thomas Keen contracted to sell to William Timms a tract of land in Cecil county for $5,000. Keen bound himself to convey the land by deed, *with general warranty*, on or before the 1st day of August 1851, and Timms, on his part, contracted to pay $500 of the purchase money on the 1st day of August 1851, with interest on the whole sum from the date of the articles, and to pay the residue as follows: $1,000 on the 1st day of May 1852, $1,000 on the 1st day of May 1853, $1,000 on the 1st day of December 1854, $1,000 on the 1st day of December 1855, and $500 on the 1st day of December 1856. The interest on the whole sum remaining unpaid, to be paid at the respective times men-

tioned; and to secure the payment of these sums, Timms contracted to execute his bonds and a mortgage of the land purchased, as well as of another parcel of land belonging to him in Cecil county.

On the 31st day of July 1851, Thomas Keen and wife executed a deed conveying to Timms the land mentioned in the articles of agreement, with a covenant of warranty *against all persons claiming under the said Keen.* And on the following day (the 1st of August 1851) Timms paid the sum of $500, and executed six bonds to secure the payment of $4,500, and interest, at the times mentioned in the articles of agreement, four of them for $1,000 each, and two for $250 each. At the same time a mortgage was executed by Timms, which is not exhibited in the cause, nor does it appear in proof for what reason it was cancelled, destroyed or abandoned. Timms, in his supplemental answer, alleges that it was deemed defective. And on the 16th day of January 1852, the mortgage sued on was executed, in lieu of the other, describing the several bonds of the 1st of August 1851, and conditioned for their payment.

After the payment by Timms of all the bonds except the last three, one for $1,000, and two for $250 each, Thomas Keen, the mortgagee, on the 8th day of December 1856, assigned the mortgage to the appellee, William Shannon, and transferred to him the three last mentioned bonds, and to enforce their payment, Shannon, on the 23rd day of December 1856, filed this bill.

The defences relied on by the appellants, are as follows: It appears that in January 1856, Timms sold and delivered to Keen goods to the amount of $74.02, and on the 22nd day of May 1856, he sold and delivered to Keen a horse and yoke of oxen at the price of $175, and claims that he is entitled to have these sums applied as credits upon the mortgage debt, by virtue of an agreement and understand-

ing made at the time with Keen, the mortgagee, that they should be so applied.

It further appears from the proceedings, that at the time of the sale and conveyance of the land in question by Keen to Timms, there was an outstanding mortgage on the same land executed by Keen and held by one George Davis, dated the 29th day of December 1849, and intended to secure the payment of $1,000, with interest, one-half on the 1st day of January 1855, and one-half on the 1st day of January 1856; and the appellant contends that he is entitled to have abated from the mortgage debt the amount due on that outstanding mortgage to Davis, a portion of the interest on which he claims to have paid on the 1st day of January 1857, and the whole of the principal and interest on the 6th day of October 1857.

This claim for allowance or abatement on account of the mortgage to Davis, will be first disposed of.

In the argument it was based on several grounds.

1st. An alleged agreement by parol, made by Keen at the time the deed for the land was made, and the bonds and mortgage of the 1st of August were executed, to the effect that he would pay the mortgage debt to Davis, and if he should fail to do so, that Timms should retain a sufficient sum for that purpose out of the last instalments of the purchase money. To prove this agreement, the testimony of the witness, Lloyd, was adduced and excepted to as inadmissible, because it varies or contradicts the written contract between the parties as evidenced by the bonds and mortgage. An examination of the authorities cited by the appellee on this point, has satisfied us that this exception is well taken, and that the parol evidence is wholly inadmissible.

In this case there is no allegation of any fraud, accident or mistake in the execution of the bonds or mortgage, and in the absence of such allegation, the same general rule

prevails in equity as at law. 2 *Story's Equity*, sec. 1531. *Watkins vs. Stockett*, 6 *H. & J.*, 435. In the case of *Parkhurst vs. Van Cortlandt*, Chancellor Kent, in speaking of this rule of evidence, said: "But I apprehend the rule to be too reasonable and too well settled to be now disturbed, that when an agreement is reduced to writing, all previous negotiations are resolved into the writing, as being the best evidence of the certainty of the agreement; every thing before resting in parol, becomes thereby extinguished or discharged." Under this rule, which this Court is not at liberty to disregard, the alleged parol agreement, and the evidence adduced to prove it, must be entirely excluded from our consideration. In no possible view of the case could such evidence be introduced to raise an equity against this complainant, who took his assignment in good faith, without any notice or knowledge of such an agreement.

2nd. As to the articles of agreement on which the appellants next rely, it is only necessary to say, that the contract between the parties having been executed, by the acceptance of the deed of conveyance of the land, and the execution of the bonds and mortgage, by the appellants, and no fraud, mistake or surprise being charged or proved in the transaction, the stipulations in the agreement must be considered as thereby discharged; and on these instruments alone, viz., the bonds, mortgage and deed, must depend the rights of the parties.

We shall therefore proceed to consider—

3rd. Whether the appellants are entitled to the abatement or allowance claimed, of the amount of the mortgage held by Davis, by reason of the special warranty in the deed? In deciding this question, we treat the mortgage sued on as if it had been executed on the 1st day of August 1851, when the bonds were given. We understand the appellee, in his written argument, to admit that at that time a mortgage was executed, for which this one was

afterwards substituted. The point then presented, is, whether, if a purchaser of land accept a deed with special warranty, and execute his bonds and mortgage for the purchase money, he can, in a suit in equity, brought by an assignee of the mortgage to enforce its payment, claim to be allowed a deduction or abatement from the mortgage debt, by reason of an outstanding incumbrance on the land within the warranty. It is material to observe that the parties litigant are not the original parties to the transaction. The complainant claims as a *bona fide* assignee of the mortgage; and the point stated involves the question of the effect of the assignment, and requires us to determine how far the equitable defence now set up by the mortgagor is thereby affected.

In Courts of Equity, a mortgage of lands is regarded as a mere security for money, a chattel interest or chose in action, the debt being considered as the principal, and the mortgage as the accessory or appurtenant thereto. See *Jamieson vs. Bruce*, 6 *G. & J.*, 74. *Pratt vs. Vanwyck*, 6 *G. & J.*, 498. *Chase vs. Lockerman*, 11 *G. & J.*, 210. *Georges Creek Coal & Iron Co's Lessee, vs. Detmold*, 1 *Md. Rep.*, 237. See also, *Clark vs. Levering*, 1 *Md. Ch. Dec.*, 178; and *Ohio Life Ins. & Trust Co. vs. Ross & Winn*, 2 *Md. Ch. Dec.*, 25.

In the case last cited, Chancellor Johnson, in considering the rights of an assignee of a mortgage of lands, recognized as applicable the well established rule, "that an assignee of a chose in action not negotiable, takes it subject to the equities which existed against it, in the hands of the assignor, at the time of the assignment. The same point was ruled by this Court at the last term, in the case of *The Central Bank of Frederick vs. Copeland & Wife*, 18 *Md. Rep.*, 305.

This brings us to the inquiry, whether the equitable defence now insisted on by the appellants, existed at the time

of the assignment, and could have been then successfully urged to defeat a recovery of the mortgage debt. If not, then it cannot now be sustained; for the rights of the assignee are in no manner affected by the acts of the mortgagee and mortgagor, which may have been done since. At the time of the assignment of the mortgage to Shannon, there was an outstanding incumbrance on the land, against which Timms had accepted and held the personal covenant of warranty of Keen. In our opinion, that covenant created no equity which could affect the rights of Shannon, the assignee.

The general rule on this subject, as stated by Chancellor Kent, is, that after the purchase has been carried completely into execution by the delivery of the dee, ... there has been no ingredient of fraud, and the purchaser is not evicted, the insufficiency of the title is no ground for relief against a security given for the purchase money." 2 *Kent's Com.*, 471. See also, *Bumpus vs. Platner*, 1 *Johns. Ch. R.*, 213; and *Abbott vs. Allen*, 2 *Johns. Ch. R.*, 519. In this last case, Chancellor Kent examines very fully the authorities, and states the law to be, "that a purchaser of land, who is in possession, cannot have relief in equity against his contract to pay, on the mere ground of defect of title, without a previous eviction." A great number of cases in the different States will be found collected in a note to *Sugden on Vendors*, (681,) *Perkins' 7th Am. Ed., Vol.* 2, 126. The conclusion from the cases is thus succinctly stated by the annotator: "In some cases it has been held that although in an action for the price of the purchase of an estate, an eviction is not necessary for a defence on failure of consideration from a defect in title, where there has been no conveyance; yet that an actual eviction is necessary to constitute a defence in such case, where a deed has been given and the vendee has entered into possession. The grantee not evicted, but remaining in undisturbed pos-

session, must rely on his covenants, except in case of fraud."
The ground upon which the decisions appear to go, is that
the bond and mortgage for the payment of the purchase
money, and the covenant of warranty from the grantor
are separate and independent covenants, and the breach of
one cannot be urged as a defence to an action upon the
other.  See the case of *Tallmadge vs. Wallis*, 25 *Wend.*,
107; and *Whitney vs. Lewis*, 21 *Wend.*, 131.

Applying to the case before us the principles deduced
from the authorities, we are of opinion that the covenant
in the deed furnishes no ground for the equity claimed in
this case against the assignee of the mortgage.  We do
not mean to express any opinion as to the effect of a pay-
ment by the mortgagor of an incumbrance like that of
Davis, if this were a suit between the original parties; nor
is it necessary to decide what might have been the effect
upon this case if the payment had been made by Timms
before the assignment.  But as the case stands, we are
clearly of opinion that the outstanding incumbrance can-
not now be urged as a ground of relief against this com-
plainant, who took the assignment before the payment, and
consequently before any equity which may have arisen
therefrom existed.  The appellant must be left to his rem-
edy at law upon the covenant.  See *Middlekauff vs. Bar-
rick*, 4 *Gill*, 290.

The question we have been considering was pressed upon
us by the appellants in argument, and although it is not
specifically stated in the pleadings, we have deemed it pro-
per to express our judgment upon it, because it arises on
the face of the proceedings, and if we had thought the de-
fence a good one, it would have been competent for us, as
suggested at the bar, to remand the cause, to enable the
appellants to make the necessary amendments in the plead-
ings.

In our opinion, the appellants were clearly entitled to

the credits of the sums of $74, and $175, claimed in their answer; not because they were in themselves proper set-offs in this suit, but because we think the proof established the agreement on the part of Keen that they should be so applied. That agreement shewed an application of those sums by the parties in part satisfaction of the mortgage debt, and constituted them payments *pro tanto*. The testimony of Jones proves that Keen agreed to apply the sum of $175 as a credit on the mortgage, and the fact that he gave a note or due-bill for the amount, constitutes no valid objection to the admissibility of the testimony.

We think there was error in the sum ascertained by the decree to be due the complainant. By an examination of defendants' exhibits W T, No. 7, and W T, No. 8, being two of the bonds, it will be seen that Keen's receipts endorsed thereon, acknowledge the payment of interest on the bonds which were assigned to Shannon, up to the 1st of August 1853. The auditor has erroneously charged interest from the 1st day of August 1851.

For this error the decree must be reversed and the cause remanded, in order that a correct account may be stated and further proceedings had in conformity with the opinion of this Court.

*Decree reversed and cause remanded.*

(Decided December 19th, 1862.)